IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* KIMBERLY BRANSCOME, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 7:16cv00087 |
| BLUE RIDGE HOME HEALTH SERVICES, INC., *et al.*, | ) ) ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Kimberly Branscome, a physical therapy assistant, brings this action against her former employer, Blue Ridge Home Health Services (BRHH); a BRHH physical therapist, Jeffery Owens (Owens); and BRHH president and owner, Dustin Snow (Snow). Branscome alleges that defendants submitted false Medicare claims, used false records material to false Medicare claims, used false records to avoid their obligation to repay the government, and retaliated against her by terminating her employment, all in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

Before the court are two motions: (1) defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and (2) defendants' motion to strike the complaint in its entirety for Branscome's serving an un-redacted copy on Snow in violation of the court's order. (Dkt. No. 19.) The matter has been fully briefed, and the court heard oral argument on August 25, 2017. For the reasons set forth below, the court will grant defendants' motion to dismiss and deny defendants' motion to strike.

I. BACKGROUND

Medicare provides home health services through a prospective payment system (PPS). (Compl. ¶ 16.) Under the PPS, Medicare pays home health agencies (HHA) a predetermined base payment, which may be adjusted. (*Id.*) Home health agencies use the electronic Outcome and Assessment Information Set (OASIS) to assess a patient's condition. (*Id.* ¶ 18.) The information in OASIS is used to determine a "case-mix adjustment" to the standard base payment. (*Id.*) This "case-mix" is organized into three dimensions and is intended to capture clinical severity factors, functional severity factors, and service utilization factors. (*Id.*) The results of OASIS are then combined with other information, and the HHA uses PC Pricer software to calculate the proper claim for each individual. (*Id.* ¶ 19.) Finally, the HHA makes a certified claim for payment using either an electronic 8371 form or a paper claim form; the claim incorporates data from OASIS and PC Pricer. (*Id.* ¶ 21.)

In March 2013, Branscome began working at BRHH as a physical therapy assistant. Owens joined as a part-time physical therapist in late 2014. Branscome learned of ten problematic visits made by Owens to patients from October 2014 through April 2015. From speaking with her patients and with her coworkers, Branscome discovered that Owens was making shorter visits and guiding patients through fewer or different exercises than he recorded in his notes. One patient informed Branscome that she had asked Owens if he was committing "Medicare fraud." (Compl. ¶ 36). Another told Branscome's coworkers, who then told Branscome, that Owens had committed "Medicare fraud." (Compl. ¶ 45.)

Branscome met with Snow twice to discuss these issues. During the first visit, sometime in late 2014, Branscome brought another employee along and told Snow how Owens "was not giving [patients] the physical therapy they needed and recording treatment that was not being

2

performed." (Compl. ¶ 48.) Snow responded that he would address the problem. During the second visit, in March 2015, Branscome showed Snow the inappropriate way Owens had pulled a patient up, and "also informed him that Owens had once again not stayed the required amount of time." (Compl. ¶ 62.) Snow responded that he did not think Branscome should be going behind Owens' back. Shortly after this meeting, Owens called Branscome and told her that "if it goes to court, you won't be involved." (Compl. ¶ 65.)

During the tenth visit, which took place on April 21, 2015, Branscome told the patient that Branscome was going to report Owens for not performing the requisite physical therapy, and Branscome asked the patient if she would be willing to repeat her statements about Owens. "Shortly thereafter," Branscome was called into the BRHH office and terminated. (Compl. ¶ 83.) Snow told Branscome that this patient had complained to her nurse that Branscome had asked her to sign a document saying "she would come to court to testify against Owens for his fraudulent billing practices and false documentation." (Compl. ¶ 85.) Branscome denies ever asking the patient to sign such a document. She alleges that Snow and BRHH terminated her "because of her persistent questions about Owens' billing practices and her statement that she was going to do something about it." (Compl. ¶ 88.)

When Branscome later filed for unemployment, BRHH denied her claim because she was "terminated for misconduct." (Compl. ¶ 92.) The Virginia Employment Commission also denied her application for unemployment benefits. (Compl. ¶ 91.) Branscome later learned that Snow and BRHH reported her to the Virginia Physical Therapy Board (VPTB) in May 2015 "for speaking with patients about Owens' fraudulent billing." (Compl. ¶ 92.) Branscome "rebutted these charges." (*Id.*)

Branscome filed suit in March 2016, alleging in part that defendants submitted false claims for payment to the United States Department of Health and Human Services (HHS) Centers for Medicare & Medicaid Services (CMS). The United States has declined to intervene in this case. (Dkt. No. 9.)

## II. DISCUSSION

**A. Standard of Review**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

4

**B. Branscome Fails to State a Claim under the False Claims Act.**

The complaint contains four counts against all defendants under the False Claims Act: (1) false Medicare claims, 31 U.S.C. § 3729(a)(1)(A); (2) false records material to Medicare claims, 31 U.S.C. § 3729(a)(1)(B); (3) reverse false claims, 31 U.S.C. § 3729(a)(1)(G); and (4) retaliation, 31 U.S.C. § 3730(h). For the following reasons, the court will dismiss, without prejudice, each of the four counts.

**1. Branscome fails to state a claim under 31 U.S.C. § 3729(a)(1)(A).**

The FCA subjects to civil liability any person "who knowingly presents or causes to be presented, a false or fraudulent claim" to the government. 31 U.S.C. § 3729(a)(1)(A). Such claims must be pleaded with particularity pursuant to Rule 9(b). *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013). Thus, a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Nathan*, 707 F.3d at 455–56 (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). The Fourth Circuit has emphasized that the purposes of Rule 9(b)— providing notice, preventing frivolous suits, eliminating disputes wherein all facts are learned after discovery, and protecting defendants from harm to their goodwill and reputation—"may apply with particular force in the context of the [FCA], given the potential consequences" for companies who transact business with the government. *Id.* at 456.

The parties disagree about plaintiff's pleading burden under Rule 9(b). Their disagreement centers on the Fourth Circuit's holding in *Nathan*. 707 F.3d at 455. Defendants argue that, per *Nathan*, Branscome must allege that a specific false claim was presented to the government for payment in order to plead a claim under 31 U.S.C. § 3729(a); plaintiff argues

that, per *Nathan*, she need only allege that defendants' actions necessarily led to the submission of false claims. In *Nathan*, an off-label marketing case, the Fourth Circuit upheld the district court's dismissal of plaintiff's amended complaint because he failed to allege "presentment"; in other words, the plaintiff failed to allege that any false claims had actually been presented to the government for payment. 707 F.3d at 455. The analysis in *Nathan* turns on whether a defendant's actions *necessarily* led to the submission of false claims, or whether a defendant's actions merely *could* have led to the submission of false claims to the government. *Id.* at 457. In the former case, plausible inferences of presentment may suffice; in the latter, plaintiffs must assert that a specific false claim was presented to the government. *Id.* at 456–57. The *Nathan* court discussed two examples of the former type of case, in which the courts reasoned that a defendant's conduct necessarily led to submission of false claims and so presentment need not be explicitly alleged: *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), and *United States ex rel. Duxbury v. Ortho Biotech Prods., LP*, 579 F.3d 13 (1st Cir. 1990). *Id.* at 457.

Defendants argue that the *Nathan* court rejected these more lenient approaches to presentment, and that, in the Fourth Circuit, a relator must allege that a specific false claim was presented. To the contrary, however, the *Nathan* court reasoned that cases such as *Grubbs* do "not alter[]" its conclusion because "[b]ased on the nature of the schemes alleged in many of those cases, specific allegations of the defendant's fraudulent conduct necessarily led to the plausible inference that false claims were presented to the government." *Id.* Thus, the Fourth Circuit did not reject the *Grubbs* approach when it stated, "To the extent that other cases apply a more relaxed construction of Rule 9(b) *in such circumstances*, we disagree with that approach." *Id.* at 457–58 (emphasis added). Rather, "such circumstances" refers to claims described in the

6

opinion's preceding sentence as those that "*could* have led, but *need not necessarily* have led to, the submission of false claims." *Id.* at 457.

Because Branscome has not alleged that a specific false claim was presented to the government, she must allege that defendants' actions necessarily led to the submission of false claims to the government in order for her claim to survive defendants' motion to dismiss. The complaint, however, falls short of alleging a necessarily-led-to-submission scheme. In *Grubbs*, the complaint set out a scheme "communicated directly to the relator by those perpetrating the fraud"; it made the explicit connection between services and billing; and it gave "a description of the billing system that the records were likely entered into" such that "the logical conclusion" was presentment. 565 F.3d at 185. Here, however, Branscome presents no allegations that would provide evidence of firsthand knowledge of the alleged fraudulent scheme; there is no explicit connection between services and billing because the complaint does not allege that any of the listed patients were Medicare beneficiaries; and the lack of connection between services and billing undercuts using Owens' notes to lead to the "logical conclusion" of presentment. Likewise, in *Duxbury*, the complaint identified "each of the eight medical providers (the who), the illegal kickbacks (the what), the rough time periods and locations [of false claims] (the where and when), and the filing of the false claims themselves." 579 F.3d at 30. Although Branscome alleges the where and when of Owens' inadequate physical therapy sessions, she does not allege the where and when of the false claims, or any information regarding the "what." While the complaint certainly sets out allegations of defendants' conduct that *could* have led to submission of false claims to the government through the case-mix adjustment, it does not sufficiently allege a scheme that *necessarily* led to the submission of false claims.

For similar reasons, Branscome also fails to allege sufficient facts that the alleged false statements were material to any payment decision by the government. "Materiality" for purposes of § 3729(a)(1)(A) "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) (internal citations and quotations omitted). The FCA's "materiality requirement is demanding." *Id.* at 2003. Indeed, the Supreme Court recently explained in *Escobar* that

> [a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular . . . requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.

*Id.* Branscome does not allege sufficient facts that would support a connection between Owens' notes and the submission of false claims to CMS. In light of *Escobar*, moreover, Branscome's argument that defendants' alleged statements were material because noting visit length is a condition of reimbursement is unpersuasive. *See id.* Branscome's failure to sufficiently allege a necessarily-led-to-submission scheme and her failure to sufficiently allege materiality are independent grounds for dismissal. Thus, the court will dismiss the first count of the complaint.

**2. Branscome fails to state a claim under 31 U.S.C. § 3729(a)(1)(B).**

The FCA also subjects to civil liability any person "who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" in order to get a false claim paid by the government. 31 U.S.C. § 3729(a)(1)(B). Unlike claims under 31 U.S.C. § 3729(a)(1)(A), those brought under § 3729(a)(1)(B) do not require proof that a defendant caused a false statement to be presented to the government. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008) (abrogated on other grounds by statute).

Rather, a plaintiff bringing a claim under § 3729(a)(1)(B) must plausibly allege that a defendant made a false statement for the purpose of getting a false claim paid by the government. *Id.* at 671. This is because the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2003 (quoting *Allison Engine*, 553 U.S. at 672) (internal quotation marks omitted). Indeed, the Supreme Court has expressly rejected the "view of materiality [that] any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." *Escobar*, 136 S. Ct. at 2004.

Examining proof of purpose, then, rather than presentment, the court finds that Branscome has failed to plausibly allege that defendants made false statements for the purpose of getting a false claim paid by the government. *See* 553 U.S. at 671. The same disconnect between Owens' notes and the submission of any false claim that was fatal to Branscome's § 3729(a)(1)(A) claim as to presentment undermines her § 3729(a)(1)(B) claim as to purpose. To conclude otherwise would be to adopt the expansive view of FCA liability against which the Supreme Court has strongly cautioned. *See Escobar*, 136 S. Ct. at 2004 (emphasizing that FCA cases target "fraud, not medical malpractice"). The court will dismiss Branscome's claim under § 3729(a)(1)(B).

### 3. Branscome fails to state a claim under § 3729(a)(1)(G).

While a traditional false claim action under the FCA involves a false statement made to the government to support a claim for money, a "reverse" false claim action involves a false statement made to knowingly avoid having to pay the government when payment is otherwise due. *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 88 (D.D.C. 2014). In other words, a reverse false claim is "fraudulent conduct that results in no payment to the government

when a payment is obligated." *Id.* (internal quotations and citations omitted). A reverse false claim occurs where a defendant "knowingly makes, uses or causes to be made or used, a false record or statement *material to* an obligation to pay or transmit money or property to the Government, or knowingly conceals and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]" 31 U.S.C. § 3729(a)(1)(G) (emphasis added).

Branscome alleges that defendants made false statements—namely, their "false allegation to VPTB falsely accusing Branscome of misconduct"— "knowingly and with the intent to avoid, conceal, and/or decrease their obligation to repay funds to Medicare." (Compl. ¶¶ 121–22.) But Branscome fails to plausibly allege that defendants' statements to the physical therapy board were material for reverse claim purposes. The complaint fails to set out any connection whatsoever between the physical therapy board and Medicare billing or payment.

Furthermore, even if Branscome had sufficiently pled materiality, reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). *Pencheng Si,* 71 F. Supp. 3d at 97. Branscome has also failed to allege any separate obligation defendants had to pay the government that would allow her reverse false claim to be premised on conduct different from that underlying her § (a)(1)(A) and § (a)(1)(B) claims. *See United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 338 (S.D.N.Y. 2004) ("[T]he reduction in money owed to the Government [may not be] the very same money that the defendants will procure . . . as a government payment . . . under [s]ection 3729(a)(1)."). Thus, the court determines that Branscome fails to state a reverse false claim.

### 4. Branscome fails to state a claim for retaliation under 31 U.S.C. § 3730(h).

The FCA prohibits retaliation against employees because of "lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this

subchapter." 31 U.S.C. § 3730(h). A prima facie case for retaliation under 31 U.S.C. § 3730(h) requires the plausible allegation that: (1) Branscome engaged in protected activity; (2) defendants knew about the activity; and (3) defendants took action against her in response. *See Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016). To survive defendants' motion to dismiss, Branscome's retaliation claim need only meet the pleading standard under Federal Rule of Civil Procedure 8(a). *See Young v. CHS Middle East, LLC*, 611 F. App'x 130, 132 (4th Cir. 2015).

Defendants challenge Branscome's retaliation claim on both "protected activity" and notice grounds. Although courts often analyze the "protected activity" and "notice" prongs together, *see, e.g.*, *Dillon v. SAIC, Inc.*, No. 1:12-cv-390, 2013 WL 324062, at *4 (E.D. Va. Jan. 28, 2013), the Fourth Circuit has cautioned against "collapsing the two prongs into the same analysis" in all cases, *United States ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 389 (4th Cir. 2012). Here, the court will consider each prong separately.

  a. *Protected Activity*

Acts done "in furtherance of an FCA claim" as well as "other efforts to stop one or more violations" of the FCA constitute protected activity. *Young*, 611 F. App'x at 133. In the Fourth Circuit, an employee's actions must "relate to company conduct that involves an objectively reasonable possibility of an FCA action" in order to constitute protected activity. *Scates v. Shenandoah Mem'l Hosp.*, No. 5:15-cv-00032, 2015 WL 6143457, at *4 (W.D. Va. Oct. 19, 2015) (citing *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010)). While conversations with employers that raise specific objections to fraud constitute protected activity, *see Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15-cv-72, 2015 WL 4937461, at *6 (E.D. Va. Aug. 18, 2015), voicing only general complaints or concerns does not,

11

*see United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 735 (4th Cir. 2010) ("A desire to see that a client gets its money's worth is, or at least ought to be, routine.") (citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) ("An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation.")).

Branscome alleges that she "engaged in protected activity when she raised concerns about Owens' treatment and billing practices with BRHH and Snow." (Compl. ¶ 125.) But Branscome specifically alleged what she told Snow and BRHH on the two occasions she voiced her concerns. At the first meeting, Branscome reported that Owens "was not giving [patients] the physical therapy that they needed and [was] recording treatment that was not being performed." (Compl. ¶¶ 48, 50). At the second meeting, Branscome "showed Snow the inappropriate way that Owens had grabbed [a patient] and pulled her to her feet," and she "informed him that Owens had once again not stayed the required amount of time." (Compl. ¶ 62.) Notably absent from these descriptions are any report by Branscome of fraud or billing problems of any kind. *See U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 389 (4th Cir. 2012) (distinguishing general "concerns and suggestions" from "threats or warnings of FCA litigation").

Branscome insists that a "fair reading" of her allegations, that two patients mentioned Medicare fraud to her and another physical therapy assistant (Compl. ¶¶ 36, 45), requires the court to infer that Branscome communicated these concerns to Snow and BRHH. To the contrary, the court declines to substitute Branscome's conclusory characterizations—that her conversations with Snow and BRHH constituted "persistent questions about . . . billing practices," (Compl. ¶ 88)—for her specific allegations, (Compl. ¶¶ 48, 50, 62, 65), which fail to

support an inference that the conversations concerned anything other than patients' alleged dissatisfaction with Owens' care. *See Giarratano*, 521 F.3d at 302 ("[W]e need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.") (internal citation and quotation marks omitted). Because Branscome has not alleged sufficient facts to show that her conversations rose above the level of general complaints to constitute objections regarding fraud, *see Owens*, 612 F.3d at 735, Branscome has failed to meet her burden on the first element of her retaliation claim.

      *b. Notice*

Even if the complaint contained sufficient allegations of protected activity, Branscome must also show that Snow and BRHH had notice that she was engaging in conduct that might lead to a viable FCA claim. *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013). Notice of protected activity is evaluated from the employer's perspective, and "turns on whether the employer . . . is on notice that litigation is a reasonable possibility." *Parks*, 493 F. App'x at 388 (affirming dismissal of FCA retaliation claim on notice grounds because plaintiff failed to show that defendants "would have reasonably believed she was contemplating or acting in furtherance of an FCA action"). *See also Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) (affirming summary judgment for employers on FCA retaliation claim where employee "merely informed a supervisor of the problem" and "never informed anyone that he was pursuing a *qui tam* action"); *Scates*, 2015 WL 6143457, at *7 (dismissing FCA retaliation claim where employee failed to allege that she made statements to supervisor that were "sufficiently suggestive of . . . anything resembling a potential FCA action.").

Just as with her two meetings with Snow and BRHH, Branscome attempts to hang her allegation of notice on Owens' statement to her that "if it goes to court, you won't be involved."

13

(Compl. ¶ 65). But here, too, Branscome fails to allege any statement regarding fraud or billing in her conversation, *see Zahodnick*, 135 F.3d at 914; indeed, Owens' comment may just as well have referred to the potential for a patient to sue for malpractice. Nevertheless, notice is evaluated from the employer's perspective, *Parks*, 493 F. App'x at 388, and Branscome also alleges that Snow told her she was terminated for asking a patient to sign a document saying that the patient "would come to court to testify against Owens for his fraudulent billing practices and false documentation." (Compl. ¶ 85). Branscome denies that she asked the patient to sign such a document (Compl. ¶ 86), a point stressed by defendants. During oral argument, however, the court presented a hypothetical to defendants' counsel, where an employee makes benign comments, but her employer jumps to the conclusion that the comments are because of fraud on the employer's part. *See Parks*, 493 F. App'x at 388 (explaining that notice analysis turns on whether an employer "reasonably believed that [the employee] was contemplating or acting in furtherance of an FCA action"). Defendants' counsel conceded that such facts, if alleged in the complaint, would be sufficient to state a claim for retaliation for purposes of a motion to dismiss.

In this case, such facts, while relevant to notice, cannot remedy Branscome's failure to allege sufficient facts to meet her burden under the "protected activity" element of 31 U.S.C. § 3730(h). *See United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-cv-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014) (dismissing claim where the plaintiff complained only of "shoddy or suspicious business practices" and possible violations of Medicare and Medicaid). Because Branscome has failed to plausibly allege a prima facie case

for retaliation,[1] the court will grant defendants' motion to dismiss her claim for retaliation under 31 U.S.C. § 3730(h).

**C. The court will not strike Branscome's complaint because she served an un-redacted copy on Snow.**

Despite the court's order on April 5, 2017, which directed Branscome to serve a redacted complaint (Dkt. No. 13), Branscome served an un-redacted copy of the complaint on Snow. Branscome explained that it was an "inadvertent mistake," but that "had Branscome served a redacted copy[, defendants] likely would have complained that they were not properly put on notice of the claims against them." (Pl.'s Opp'n 27, Dkt. No. 27.) Defendants urge the court to strike Branscome's complaint in its entirety as a sanction for her "deliberate, calculated decision to defy the Court's order." (Defs.' Reply 17, Dkt. No. 29.)

The court notes that Branscome's explanation of her "mistake" undermines her characterization of it as "inadvertent." Nevertheless, Branscome's counsel took responsibility for the mistake during oral argument, and the court finds that striking the complaint in its entirety would be a disproportionate sanction. The cases relied on by defendants bolster this conclusion. *See Rutherford v. Palo Verde Health Care Dist.*, No. 13-cv-1247, 2014 WL 12632901 (C.D. Cal. Apr. 17, 2014) (denying defendants' motion to disqualify plaintiff's counsel despite plaintiff's transmission of protected health information to attorney via USB drive in violation of HIPAA); *Zaczek v. Fauquier Cty.*, 764 F. Supp. 1071 (E.D. Va. 1991), *aff'd*, 16 F.3d 414 (4th Cir. 1993) (dismissing complaint with prejudice to sanction pro se prisoner's filing 13 additional motions after court's repeated warnings regarding his initial 37 motions, filed within three months). Defendants do not point to any case law, and the court is not aware of any case, that supports

---

[1] Regardless, the parties agree that the retaliation claims against Owens and Snow must be dismissed because the FCA does not provide for individual supervisor liability. *See Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 750 (E.D. Va. 2016).

defendants' assertion that striking the complaint is warranted because Branscome "apparently believed she knew better than the Court." (Dkt. No. 29 at 16.) Thus, the court will deny defendants' motion to strike the complaint.

III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion to dismiss, without prejudice, and deny defendants' motion to strike the complaint.

An appropriate order will follow.

Entered: March 13, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge